UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


HUBERT W. SMITH AND JOYCE F. SMITH                                            PLAINTIFFS

V.                                                         CIVIL ACTION NO. 1:06cv515-LTS-RHW

RIMKUS CONSULTING GROUP, INC.,                                               DEFENDANTS
THOMAS E. HEIFNER, P.E., INDIVIDUALLY,
PAUL D. COLEMAN, INDIVIDUALLY,
GARY L. BELL, INDIVIDUALLY, AND
MERITPLAN INSURANCE COMPANY


MEMORANDUM OPINION

Plaintiffs have sued multiple defendants arising from alleged severe damage caused by Hurricane Katrina to Plaintiffs' residence in Gulfport, Mississippi, on August 29, 2005. Meritplan Insurance Company (Meritplan) is the Plaintiffs' insurer.  Plaintiffs allege that the adjustment of the loss was assigned to CGI Group, Inc. (CGI), which subsequently utilized Rimkus Consulting Group, Inc. (Rimkus) for an engineering assessment of the cause of the damage.  Defendants Thomas E. Heifner (Heifner) and Gary L. Bell (Bell) are associated with Rimkus.

The Amended Complaint for Fraud, Reformation of Engineering Report, Injunctive Relief, Breach of Contract and Bad Faith was filed originally in the Chancery Court of Harrison County, First Judicial District.  Meritplan filed a Notice of Removal [1].  Rimkus and Bell joined in and consented to this action by separate document [2].  Paul Colman (also associated with Rimkus and whose name was misspelled as "Coleman" in the original pleadings), a Mississippi resident, was originally named a Defendant and joined in the removal.  However, shortly after removal, Colman was [16] voluntarily dismissed pursuant to Fed. R. Civ. P. 41.  Heifner, who was not part of the removal process, has since been served.

Rimkus and Bell have filed a motion [6] to dismiss for failure to state a claim upon which relief can be granted (Fed. R. Civ. P. 12(b)(6)); Bell and Heifner have filed  motions, [5] (also docketed at [9])  and  [28], to dismiss for lack of personal jurisdiction (Fed. R. Civ. P. 12(b)(2)); and Heifner separately requests [29] Rule 12(b)(6) dismissal.  These three defendants recently filed motions to amend their answers [50], [51], and [52] under Fed. R. Civ. P. 15(a) to assert cross-claims against Meritplan.

The Rule 12(b)(6) Motions

In considering a motion under Fed. R. Civ. P. 12(b)(6), the Court must accept as true the

well-pleaded facts set out in the complaint, and the Court must allow all inferences favorable to the Plaintiffs.  *Lowery v. Texas A & M University System*, 117 F.3d 242 (5th Cir. 1997). Dismissal is proper only if it appears that the Plaintiffs can prove no set of facts in support of their allegations that would entitle them to relief.  *Conley v. Gibson*, 355 U.S. 41 (1957).

The first count in the Amended Complaint is for fraud against Rimkus, Heifner, the now-dismissed Colman, and Bell.  Since Colman has been dismissed voluntarily, references to him in the pleadings will be deleted.

The underlying bases of Plaintiffs' claims are found in paragraphs 13 through 21:

The Smiths allege that their home and personal property was severely damaged by the winds of Hurricane Katrina on August 29, 2005.

The Smiths timely and properly filed a claim with Meritplan who assigned the adjustment of the Smiths' loss to CGI Group Inc. ("CGI").  Plaintiffs allege that CGI is a Canadian public company listed on the NYSE with one hundred offices in North America, Europe, and the Asia Pacific; CGI contracts with insurance companies to outsource claims adjustment and processing.  Meritplan utilized CGI for many Hurricane Katrina losses including the Plaintiffs'.  All actions undertaken by CGI with respect to the Smith loss were performed with the authorization of Meritplan, and were within the scope of CGI's contractual arrangement with Meritplan.

CGI assigned a claim number of 200520042 to the Smiths' loss and the adjuster assigned to adjust the loss was Robert Stone.  Eventually, CGI assigned the adjustment of the Smiths' loss to Kim Lynch.

The first field inspection performed by CGI at Meritplan's request was done by Dean Palmeri, a field catastrophe adjuster.  His report recommended a $16,000.00 wind payment before a reduction of over $6,000.00 for a deductible.  The Smiths were not satisfied and requested a structural engineer's opinion on what they believed to be serious and obvious structural damage caused by wind.

CGI wrote to the Smiths and warned them that Meritplan would not pay for damage caused by flooding or storm surge and further explained that a structural engineer was needed to determine what damage was caused by wind and what damage was caused by storm surge.  A copy of this letter is attached hereto as Exhibit "B."

Based on this request, CGI dispatched a structural engineer whose identity remains unknown to the Smiths.  Neither CGI nor Meritplan revealed the substance of his findings and opinions, but instead sent out a second engineer, James ("Ken") Overstreet, who was employed with Rimkus.  Mr. Overstreet was very candid with the Smiths and verbally indicated to them on the date of his inspection that most of the structural damage was caused by wind, not flooding.  The Smiths felt vindicated and relieved, but those feelings were not to last long.

Plaintiffs allege that Ken Overstreet worked out and completed an engineering report dated December 20, 2005, that was favorable to their claim. An unsigned copy of his report is attached here to as Exhibit "C." This report was emailed to Rimkus's Jackson, Mississippi office by Mr. Overstreet for signature by Corey Green, the licensed Mississippi engineer assigned to "sign off" on the report. Plaintiffs allege that Rimkus, acting by and through its agents and employees, particularly . . . Bell and Heifner, altered Ken Overstreet's original report, and this alteration deleted any reference to wind as a cause of the "racking of the home," and inserted an altered conclusion that the structural damage and "racking" was caused by storm surge. Plaintiffs allege that Rimkus, acting by and through it agents and employees, altered this report and then forged Ken Overstreet's name to the altered report without Mr. Overstreet's approval or knowledge. The altered report dated January 20, 2006, is attached hereto as Exhibit "D."

Plaintiffs allege that Rimkus, . . . Bell and Heifner then forwarded the unfavorable, altered report to CGI and Meritplan and "buried" or otherwise disposed of the original favorable report authored by Ken Overstreet on December 20, 2005. Upon request, a copy of the altered report was forwarded to William B. Weatherly, attorney for the Smiths, by CGI, Meritplan's adjusting company, on February 6, 2006.

Plaintiffs' claim for severe structural wind damage has not been paid by CGI or Meritplan Insurance Company, and Plaintiffs allege and charge that CGI and Meritplan have no intention of paying their claim, based entirely on the substance of the altered Rimkus Engineering report dated January 20, 2006.

The particular averments of fraud and related damages as to the movants are found in paragraphs 25 through 30:

Plaintiffs allege that Rimkus, Bell . . . and Heifner intentionally and maliciously altered Ken Overstreet's December 20, 2005, engineering report to falsely indicate storm surge was the cause of loss, when in fact Ken Overstreet found and opined that wind was the cause of loss and structural damage to your Plaintiffs' home.

Plaintiffs allege that as a result of the Defendants' joint fraudulent conduct, they have been damaged in that CGI and Meritplan have refused to pay and indemnify them for their extensive and serious casualty losses as required under policy number MH01101664.

Further, Plaintiffs allege they have been denied additional living expenses due under policy number MH01101664 as a direct consequence of the Defendants' fraudulent conduct and false reports.

Plaintiffs allege they have expended a sum in excess of $150,000.00 out of their personal savings to repair their house, and that their repairs were only partial repairs, not complete, full and final repairs.

>Plaintiffs allege that Defendants Rimkus, Bell, . . . and Heifner acted with malice, and intentionally acted to defraud them, necessitating an award of compensatory damages for all policy benefits due under policy number MH01101664, attorney's fees and punitive damages to the fullest extent allowed by Miss. Code Ann. § 11-1-65.

>Plaintiffs further allege that they have suffered emotional stress and mental anguish as a direct and proximate result of the Defendants' fraudulent conduct, and demand that Rimkus, Bell, . . . and Heifner should fully and fairly compensate them for these items of damage.

There is also a count for equitable reformation of engineering report, a count of breach of contract lodged against Meritplan, a count of bad faith against Meritplan, and a separate count for punitive damages. It is noted that CGI is not a named defendant. For factual purposes only, it appears that the total coverage under the insurance policy for dwelling, other structures, personal property, and loss of use is $572,400.00

Bell is identified as "the individual in charge and control of the Mississippi district for Rimkus and has a paramount authority to approve any and all corporate decisions for the Rimkus Mississippi district . . . ." It is further alleged that Bell "individually conspired with Heifner . . . and other Rimkus employees to commit the wrongful, improper and fraudulent acts complained of . . . ." Heifner is a professional engineer whose signature appears on the January 20, 2006, report. It has already been mentioned that Overstreet's name is on that document as well.

Aside from the standard applicable to a Rule 12(b)(6) motion, certain portions of the complaint have been quoted in full because there is an explicit assertion in Rimkus's, Bell's, and Heifner's 12(b)(6) motions (as well as in the answers and proposed amended answers) that Plaintiffs' allegations of fraud, which Rimkus, Bell, and Heifner deny occurred, do not meet the heightened pleading standard of Fed. R. Civ. P. 9(b). The usual remedy in the face of a valid Rule 9 claim is not outright dismissal, but allowance of an amendment under Fed. R. Civ. P. 15. However, if the original complaint suffered such shortcomings as being contrary to Rule 9, they certainly did not prevent Rimkus, Bell, or Heifner from filing answers (whether original or amended) or framing responses to the fraud claims. It also appears that Plaintiffs have set forth the minimum required particularities, usually framed in terms of the who, what, when, where, and how of the alleged fraud. *See, e.g., United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450 (5th Cir. 2005). Of course, any defendant may resort to Fed. R. Civ. P. 12(e)'s provision for a more definite statement.

As to movants' substantive claims, the Mississippi Supreme Court, reasoning that "[j]urisprudence should not be in the position of approving a deliberate wrong," *Bass v. California Life Insurance Co.*, 581 So. 2d 1087, 1090 (Miss. 1991), has held:

>An adjuster has a duty to investigate all relevant information and must make a realistic evaluation of a claim . . . . However, an adjuster is not liable for simple negligence in adjusting a claim . . . . *He can only incur independent liability when his conduct constitutes gross negligence, malice, or reckless disregard for the rights of the*

>   *insured.*

*Id.* (quoting *Dunn v. State Farm Fire & Casualty Co.*, 711 F. Supp. 1359, 1361 (N.D. Miss. 1987); citations omitted) (emphasis added).

The Plaintiffs' cause of action is not based merely on breach of contract.  There is no question that they have alleged that movants committed, approved, or otherwise participated in a deliberate wrong related to the circumstances surrounding the preparation of, issuance of, and reliance on the report dated January 20, 2006.  It is Plaintiffs' position that James K. Overstreet, whose name appears on that document as one of its authors, did not give his consent, permission, or authorization for any one to sign his name to it.  His signature does not appear on the first report (which movants call a "draft") and the one on the second is initialed by someone else.

Heifner's carefully worded affidavit in support of his 12(b)(2) motion is more telling of his independent role giving rise to potential liability in adjusting the claim.  He describes himself as "self-employed," an "outside engineering consultant."  He is the "engineer of record for the Rimkus investigation into the damage at the Smith residence," although he conducted no on-site investigation nor spoke with them in any manner.  He did not communicate with Bell "until after the report had been sent to CGI Adjusters."

Bell has not submitted an affidavit.  He goes no farther than denying involvement in investigating or generating any reports regarding the Plaintiffs' residence; denying that he engaged in any conduct related to Plaintiffs' claims in Mississippi; and denying that he had any relationship, contractual or otherwise, with Plaintiffs.  All of these assertions are also implicated with the issue of personal jurisdiction discussed *infra*.

Under the amended complaint, the movants stand accused of corporate or personal misconduct associated with the adjustment of the Plaintiffs' claim that is cognizable under Mississippi law.  It is not the purpose of a motion to dismiss to substitute for or bypass the development of relevant evidence, and it is also not the point for weighing credibility.  This Court is not in a position to declare, allowing all inferences favorable to the Plaintiffs, that there are no set of facts that would entitle them to relief.  Accordingly, Rimkus's, Bell's, and Heifner's motions to dismiss grounded on Fed. R. Civ. P. 12(b)(6) will be denied.

The Rule 12(b)(2) Motions

In *Brown v. Flowers Industries, Inc.*, 688 F.2d 328 (5th Cir. 1982), *cert. denied*, 460 U.S. 1023 (1983), the court of appeals summarized well settled law:

>   In a diversity action a federal court enjoys jurisdiction over a nonresident defendant to the extent permitted by the long-arm statute of the forum state . . . . Two tests must be met before a state statute can confer jurisdiction over a nonresident defendant.  First, the defendant must be amenable to service under the statute, a requirement that is controlled by the law of the forum state. Second, assertion of jurisdiction over the defendant must be consistent with the due process clause of the

>fourteenth amendment, a requirement that is controlled by federal law.  Due process requires that a nonresident defendant have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" or that he perform some act "by which (he) purposefully avails (him)self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," before the forum may extend its long-arm to embrace him.
>
>. . . .
>
>The party invoking the jurisdiction of a federal court bears the burden of establishing the court's jurisdiction over a nonresident defendant . . . . On a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint, except as controverted by the defendants' affidavits, must be taken as true.
>
>. . . .
>
>An alleged tortfeasor need not have been present in the state.  If, as is alleged in this case, he causes injury in Mississippi, he is covered by the statute.
>
>. . . .
>
>The number of contacts with the forum state is not, by itself, determinative . . . . What is more significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the benefits of the forum state . . . . "When a defendant purposefully avails himself of the benefits and protection of the forum's law--by engaging in activity . . . outside the state that bears reasonably foreseeable consequences in the state --maintenance of the law suit does not offend traditional notions of fair play and substantial justice."

*Id.* at 331-33 (footnotes and citations omitted).

The court recognized two other relevant factors in analyzing the due process prong: "the interest of the state in providing a forum for the suit," and the "relative conveniences and inconveniences to the parties."  *Id.* at 333 (citations omitted).  In *Brown*, personal jurisdiction was found where a single defamatory phone call by a nonresident about a Mississippi resident was made from outside the state to a person in Mississippi.

Another Fifth Circuit opinion, *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162 (5th Cir. 1985), contains an excellent discussion of Mississippi's long-arm statute (Miss. Code Ann. § 13-3-57).  *Thompson* also draws more clearly the distinction between the exercise of specific and general jurisdiction:

>The former occurs "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum."  . . . "General

jurisdiction" is exercised when a state asserts personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum. . . . When the issue is one of general jurisdiction the defendant's contacts with the forum are examined to determine whether they are sufficiently systematic and continuous as to support a reasonable exercise of jurisdiction . . . . When the issue is one of specific jurisdiction, a court must examine the relationship among the defendant, the forum, and the litigation.

755 F.2d at 1170 (citations omitted).

Mississippi's long-arm statute, cited *supra*, covers *inter alia* any nonresident person who commits a tort in whole or in part against a resident of this state. Bell and Heifner attempt to point to distinctions between the injury aspect of a tort (injury being the invasion of any legally protected interest of another) which confers jurisdiction, and the occurrence of some consequential damages in the state which does not. This Court agrees that "it is clear that the Fifth Circuit never intended a state to sacrifice the sovereign power of their courts by rightfully delineating a difference between far flung economic effects of torts and the far more common scenario where the injury and damages occur together in place and time." *Tellus Operating Group v. R & D Pipe Company*, 377 F. Supp. 2d 604, 608 (S.D. Miss. 2005). *Cf. First Trust National Association v. Jones, Walker, Waechter, Poitevent, Carrere & Denegre*, 996 F. Supp. 585 (S.D. Miss. 1998) (no jurisdiction in Mississippi federal court where a Minnesota financial institution sued a New Orleans based law firm for an opinion issued by the law firm on a ship mortgage prepared by Texas attorneys to a New York investment banking house and delivered to counsel for the banking house in Dallas; only Mississippi connection was the location of the property on which the opinion was issued).

As mentioned above, Heifner, a resident of Panama City Beach, Florida, at relevant times working out of Rimkus's Pensacola office, has submitted an affidavit. It reveals that he was assigned Hurricane Katrina files and was "involved in the investigation of the Smith home as a result of the extraordinarily high amount of investigations requested by insurance companies following Hurricane Katrina." Rimkus, which received hundreds of requests to investigate casualty losses along the Gulf Coast, asked Heifner and several other engineers "throughout the United States to assist in the generation of the reports prepared in these investigations."

Although Heifner's affidavit is in terms of not being given Mississippi assignments on a continuous and systematic basis, it is specific jurisdiction which is applicable here. Bell, an adult resident citizen of New Orleans, Louisiana, and who purportedly works in Rimkus's office there, has not submitted an affidavit; nevertheless, his identified role as the individual in charge and control of the Mississippi office with paramount authority to approve any and all corporate decisions for the Rimkus Mississippi district is part of the same insurance claim process.

The source and connection of this cause of action is an insurance policy issued to Mississippi residents for losses sustained to their Mississippi home by Hurricane Katrina, along with intentional torts alleged to be associated with the adjustment of their claim. In the realm of the insurance world, the connection between this contract, this loss and claim for benefits, the company's investigation, the submission of a report as part of the investigation, and the ultimate

decision made by the company utilizing that report bring reasonably foreseeable consequences in this state, not of the far flung economic nature but of injury and damage associated with insurance policies and independent torts (or even gross negligence, malice, or reckless disregard) which may arise from them.  Those performing work for Rimkus knew or should have known this resulting impact was likely.  Whether Plaintiffs are able to prevail ultimately or these Defendants can mount a successful defense is left for another day, but Plaintiffs have met their burden that this state has an interest in providing a forum for them to pursue their cause of action, and  Panama City Beach resident Heifner and New Orleans resident Bell remaining in this suit is not comparatively inconvenient.

It is my opinion that subjecting Heifner and Bell to appear in this forum neither violates Mississippi's long-arm statute nor offends traditional notions of fair play and substantial justice.  Their motions to dismiss under Fed. R. Civ. P. 12(b)(2) will be denied.

The Rule 15(a) Motions

The fact that Heifner and Bell seek to assert cross-claims against Meritplan bolsters the conclusion that it is not inconvenient for them to appear in this Court.  No objection has been offered to Rimkus's, Heifner's, and Bell's requests to amend their answers.  On the authority of Fed. R. Civ. P. 15(a), their motions in this regard will be granted.

A separate order shall issue.  Decided this the 12th day of September, 2006.

s/ L. T. Senter, Jr.
L. T. Senter, Jr.
Senior Judge